IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>   Plaintiff,<br><br> vs.<br><br>GARTH RONALD PETERSON,<br><br>   Defendant. | §<br>§<br>§<br>§<br>§  Civil Action No. CV 12-2033<br>§  Weinstein, Jack B.<br>§<br>§<br>§<br>§<br>§ |

### RECEIVER MARION A. HECHT'S MEMORANDUM IN SUPPORT OF MOTION SEEKING AUTHORITY TO WIND UP THE RECEIVERSHIP ESTATE

Marion A. Hecht ("Receiver"), Receiver for Garth R. Peterson, by and through her counsel, Whiteford, Taylor & Preston L.L.P., in accordance with Section XIII of the Court's May 3, 2012 Order (Docket Entry No. 7) Appointing Receiver ("Appointment Order"), hereby submits this Memorandum in Support of Motion Seeking Authority to Wind up the Receivership Estate. The Receiver seeks an order, in the form proposed attached hereto, which includes the Court's approval to: (a) begin the wind up the Receivership Estate; (b) make an interim payment to SEC for remission to the U.S. Treasury of $3,400,000; (c) shred all hard copy documents and retain electronic documents for a period a ten years; (d) set up a reserve of approximately $172,000 (the "Reserve");[1] (e) transfer the funds paid by Defendant Peterson currently in the Registry of the Court to the SEC for remission to the U.S. Treasury; and (f) approve all actions and activities to date taken by or on behalf of the Receiver as reported in the previously filed

---

[1] The "Reserve" will be used and accounted for in completing the wind up activities normally required to resolve a federal equity receivership for the purposes identified in the paragraph below in (iii).

Receiver's Reports and Fee Applications, and all payments made to date by the Receiver in connection with the administration of the receivership estate.

As discussed in more detail in Section II below, the Receiver's Motion Seeking Authorization to Wind Up the Receivership Estate is now appropriate because: (i) the final recovery due to the Receivership Estate was received in April 19, 2018, following the 2015 sale of the principal asset and this year's final resolution of Peoples Republic of China ("PRC") tax payments; (ii) the Receiver is not aware of any other lien, potential liens, or other claims against the Receivership Estate; and (iii) only the usual and customary administrative closing and wind up procedures for a federal equity receivership estate remain, including payouts of funds to the SEC for remission to the U.S. Treasury and to the Receiver and her professionals as fees; preparation and filing of the final U.S. tax filings and related Form 4810; preparation of the Final Report and Final Accounting with reconciliation of the Reserve for filing with this Court; preparation and filing of notice to Internal Revenue Service of termination of fiduciary relationship on Form 56; preparation of Notice to the Court seeking an Order of Discharge of Receiver and Termination of the Receivership Estate; and the disposition of Receivership records, among other residual and customary tasks.

I.   BACKGROUND

   A. <u>Final Judgment Against Defendant Peterson and the Disgorged Asset</u>

On April 25, 2012, the U.S. Securities Exchange Commission ("SEC") filed a Complaint ("Complaint") alleging that from at least 2004 to 2007, Defendant Garth Peterson, while employed at Morgan Stanley's real estate investment and fund advisory business, secretly acquired millions of dollars' worth of real estate investments and violated the anti-bribery and internal controls provisions of the Foreign Corrupt Practices Act of 1977. In its Complaint, the SEC sought an order: (i) permanently enjoining Defendant Peterson from violating Sections

13(b)(5) and 30A of the Exchange Act [15 U.S.C. Sections 78m(b)(5) and 78dd-1] and Sections 206 (1) and 206(2) of the Advisers Act [15 U.S.C. Sections 80B-6(1) and 8-b-6(2)]; (ii) ordering Defendant Peterson to pay a civil penalty; (iii) ordering Defendant Peterson to disgorge ill-gotten gains wrongfully obtained as a result of his illegal conduct, including all of his right, title and legal, equitable, or beneficial interest of any kind in the Shanghai Jin Lin Tiandi Serviced Apartments ("JLT Apartments"), held alone or with others and whether direct or indirect (the "Disgorged Asset"), plus pre-judgment interest; and (iv) freezing and appointing a Receiver over Defendant Peterson's interest in the JLT Apartments. (*See* Complaint at Docket Entry No. 1). Also on April 25, 2012, the SEC filed its Memorandum in Support of its Consent Application for an Order Appointing a Receiver ("Memorandum for Receiver") -- including Exhibit 1, proposal submitted by Marion A. Hecht, and Exhibit 2, a proposed Order Appointing Receiver (*See* Memorandum in Support at Docket Entry No. 1). In addition, also on April 25, 2012, the SEC filed a proposed Final Judgment, by consent, as to Defendant Peterson.

This Court, in its Final Judgment entered May 3, 2012 ("Final Judgment") as to Defendant Peterson, concluded that Defendant Peterson is liable for $3,667,713.00 in disgorgement, plus $154,900.44 prejudgment interest, in the total amount of $3,822,613.44[2] representing profits gained as a result of the conduct alleged in the Complaint. The Final Judgment, ordered that Defendant Peterson shall satisfy this liability in full by: (i) paying

---

[2] Of that amount, the Final Judgment stated that $2,741,693 represented Defendant Peterson's profits on his interest on the Disgorged asset. (*See* Final Judgment at Docket Entry No. 8, page 5). This value was based on the estimated fair market value at the time of the Judgment in 2012. The Receiver's ultimate recovery on the Disgorged Asset was $3,907,932.85, which was received in 2015 and 2018 based on the sale of the JLT Apartments, as discussed in more detail in Section II of this document. Because Peterson's Judgment states that the full value of the Disgorged Asset is property of the Receivership, these excess proceeds are being disposed of as set forth in this Motion and Memorandum.

3

$241,589.00[3] and (ii) relinquishing and transferring to the Receiver the Disgorged Asset. (*See* Final Judgment at Docket Entry No. 8; Pages 5-6, Section IV).

This Court acknowledged Defendant Peterson's admission in the Consent that Defendant Peterson owned and controlled 5.16% of the JLT Apartments through a series of companies.[4] (*See* Final Judgment at Docket Entry No. 8; Pages 6-7, Section IV, and Order Appointing Receiver at Docket Entry No. 7, page 1).

Pursuant to the Final Judgment, Defendant Peterson relinquished all of his legal and equitable right, title, and interest in the Disgorged Asset, and no part of the Disgorged Asset or any proceeds therefrom shall be returned to Defendant Peterson. (*See* Final Judgment at Docket Entry No. 8; Page 7, Section IV).

Defendant Peterson pled guilty in a parallel criminal action on April 25, 2012 (*United States v. Peterson*, No. 1:12-CR-00224-JBW E.D.N.Y), and was sentenced on August 16, 2012(*See* Docket Entry No. 22).

---

[3] The Receiver confirmed that $241,589 was deposited with the Clerk of the Court pursuant to the Final Judgment at page 5, Section IV, which required that the $241,589 be deposited with the Clerk of the Court and placed into an interest bearing account utilized by the Court until further Order from the Court. *See* Docket Entry No. 8. Pursuant to the Receiver's request, $25,000 was the only drawdown from those funds and which was used to cover some fees and expenses of the Receiver. The $25,000 check, dated November 6, 2012, was issued from the U.S. Treasury to the Garth Peterson Receivership Estate and deposited by the Receiver. *See* Docket Entry No. 19.

[4] As found by the Court, Defendant Peterson's interest in the Disgorged Asset involved direct and indirect interests in the following entities: Paraplay (a British Virgin Islands Company); Strong Man Ltd. ("Strong Man" (a British Virgin Islands Company); Asiasphere Holdings Ltd. ("Asiasphere") (a British Virgin Islands Company); Jin Lin Tiandi Holding Company (A Caymans Island Company); Sky Luck Property Corp. (a British Virgin Islands Company); King Project Limited (a Hong Kong Company); Shanghai Jin Lin Tiandi Serviced Apartment Management Co. Ltd. (a People's Republic of China Company). Defendant Peterson admitted that he, directly and/or through his complete ownership control of Paraplay, owned and controlled 81% of Strong Man, which owned and controlled 53% of Asiasphere, which owned and controlled 12% of Jin Lin Tiandi Holding Company; and admitted it is his understanding that Jin Lin Tiandi Holding Company owned 100% of and controlled Sky Luck Property Corp., which owned 100% of and controlled King Project Limited, which owned 100% of and controlled Shanghai Jin Lin Tiandi Serviced Apartment Management Co. Ltd., which owned 100% of and controlled the JLT Apartments. *See* Docket Entry No. 7, page 4, paragraph 2.

B.  <u>Appointment of Receiver to Administer the Disgorged Asset</u>

Pursuant to the Appointment Order entered May 3, 2012, this Court took exclusive jurisdiction and possession of the Disgorged Asset. Pursuant to the Appointment Order and until further Order of this Court, Marion A. Hecht was appointed to serve as Receiver for the Receivership Property; Receiver and her staff at CliftonLarsonAllen, LLP ("Clifton"), together with Whiteford, Taylor & Preston L.L.P. ("Receiver's Counsel"), were appointed to implement the purposes of this Receivership.

## II.   OVERVIEW OF THE RECEIVER'S ACTIVITIES AND MONETIZATION OF THE DISGORGED ASSET

A.  <u>Sale of Disgorged Asset and Balance of Receivership Estate</u>

The Disgorged Asset was Peterson's 5.16% interest in the JLT Apartments through his ownership in a British Virgin Islands Company called Asiasphere.[5] Pursuant to the Appointment Order, the Receiver assumed control of the Disgorged Asset and successfully monetized it for $3,907,932.85 through a sale of the JLT Apartments, as detailed below. The Receiver previously reported this sale to the Court in the Receiver's Notice of the Monetization of the Disgorged Asset filed September 18, 2015, (*See* Docket Entry No. 53).

On Sept 11, 2015, MSR Capital Two Ltd ("MSR"), Flourish City Limited ("Flourish"), Asiasphere, and Enrich Win Investment Limited ("Enrich") (together the "Sellers") entered into a share purchase agreement ("SPA") with ZRT Grandton Capital (International) LP, through its General Partner, ZRT Grandton Investment Management (International) Ltd, (the "Buyer") in relation to the sale and purchase of 100% of shares in Jin Lin Tiandi Holding Company

---

[5] A more detailed description of this ownership structure and the entities involved is provided below. (*See also* the Final Judgment as to Defendant Garth Peterson (Docket Entry No. 8) and the Order Appointing Receiver at Docket Entry No. 7; Page 2, Paragraph 2). *See* footnote 3 above.

5

("JLTHC"). This sale was negotiated and executed by Morgan Stanley, as manager of MSR that was the majority owner of the JLTHC, which wholly owned the JLT Apartments.

Immediately before completion of the sale, MSR, Flourish, Asiasphere and Enrich held 54.6%, 23.4%, 12% and 10%, respectively, of shares in JLTHC.

The purchase price of the SPA was based on the agreed value of the JLT Apartments of RMB 900 million, with adjustment for net debt of JLTHC.

The SPA required that Peterson's share of the sale proceeds (42.93% of all payments payable to Asiasphere, as that was his ownership percentage of Asiasphere) be made directly to the bank account of the Garth Peterson Receivership Estate. Accordingly, the Receiver received $3,805,041.17 on October 26, 2015. Since the sale, Morgan Stanley, on behalf of the Sellers, had been in negotiations with the PRC tax authorities related to the sale. After more than two years, these tax issues recently were resolved, and in January, 2018, the Sellers completed the final payment of the withholding tax in relation to the sale.[6] The total net sale proceeds from the sale of the Disgorged Asset, after all taxes and expenses, paid to the bank account of Garth Peterson Receivership was $3,907,932.85. Beyond the $3,805,041.17 initial sales proceeds received on October 26, 2015, the total recovery includes: (a) $31,448.25 on January 22, 2016, representing post closing working capital adjustments based on the Receiver' pro-rata interest; (b) $61,417.56 on April 17, 2018 representing the refund of selling expense reserve held by Morgan Stanley Real Estate Fund 1585 on behalf of the sellers as per the SPA; and (c) $10,025.87 on April 19, 2018.

---

[6] The Receiver participated ratably with the other investors in the JLT Apartments, and the Receiver's vote was not required to consummate the sale. Notice of the sale was made to the PRC taxing bureau before the closing. KPMG, the tax advisor for the sale, negotiated with the PRC taxing bureau post sale regarding the finalization of any tax payment owing. This process took over two years. A Morgan Stanley senior executive involved with the sale and the closing process confirmed to the Receiver that the PRC taxing bureau finalized and settled the tax amounts due and that no further payment is required from the selling shareholders as sufficient funds were escrowed at closing.

The Receivership Estate presently consists of $3,702,848.06 in cash in the Receiver's bank accounts. As shown on the Standardized Fund Accounting Report as of June 25, 2018 ("SFAR") appended hereto as Exhibit A, this amount consists of $3,960,080.60 in receipts to the receivership estate (cash disgorgement from Defendant Peterson of $25,000; the recovery regarding Disgorged Asset of $3,907,932.85; and interest of $27,146.81) less disbursements from the receivership estate totaling $257,232.60 (professional fees, travel, and expenses of $257,229.60 and bank fees of $3.00).[7]

B. <u>Case Administration – Completed Tasks</u>

Pursuant to paragraph 49 of the Appointment Order, on August 6, 2012, the Receiver filed her Liquidation Plan with the Court reflecting her plan for the fair, reasonable and efficient recovery and liquidation of the Receivership Property *(See* Liquidation Plan at Docket Entry No. 14, Page 2, Paragraph 3).

The Receiver's case administration efforts to date include, among other matters:

1. Served notice of the Appointment Order to relevant parties, including the JLT Apartment Owners.

2. Opened bank accounts including insured receivership custodial account.

3. Filed the Receiver's Motion to Extend Deadline for Filing First Interim Fee Application; and filed Interim Fee Applications for the Periods ended June 30, 2012; September 30, 2012; December 31, 2012; March 31, 2013; June 30, 2013; September 30, 2013; December 30, 2013; March 31, 2014; June 30, 2014; December 31, 2014; and May 31, 2016.

4. Obtained a Taxpayer Identification Number for the Garth Peterson Receivership Estate.

5. Filed the Receiver's Motion for Order Directing Turnover $25,000 from the $241,589 disgorgement paid to the Court by Defendant Peterson to the Garth Peterson Receivership Estate. (Docket Entry No. 19).

---

[7] Fees were paid at eighty percent (80%) and administrative expenses such as tax return preparation and travel were paid at (100%).

6. Negotiated and executed an Asset Transfer Agreement to the Receivership Estate in which Peterson transferred his rights and interest in the Disgorged Asset.

7. Prepared and negotiated a Mutual Release between the Receiver and Leo Seewald, as detailed in Section V below.

8. Prepared and filed six status reports with the Court.

9. Prepared and timely filed 2012, 2013, 2014, 2015, 2016, and 2017 Qualified Settlement Fund ("QSF") Receivership Estate federal returns with the Internal Revenue Service ("IRS") and corresponding state tax returns with the Commonwealth of Virginia.

10. Communicated with parties regarding the SPA, including the reconciliation of the funds distributed therefrom.

11. Prepared and filed Forms 4810 with the IRS for the QSF federal returns for the tax years ended 2014, 2015, 2016, and 2017.[8] The purpose of Form 4810 is to seek prompt determination from the IRS that it has accepted the QSF returns "as filed and there are no further actions" required of the Receiver and/or Receivership Estate. On September 15, 2017, the IRS confirmed that it has accepted the 2014, 2015 and 2016 QSF returns as filed and there are no further actions required. The Receiver is waiting for a response from IRS to her filing of Form 4810 for the 2017 QSF.[9]

C. Case Administration – Tasks Necessary for Wind Up

While all recovery has been received and most of the tasks required of the Receiver are also completed, there remain some tasks that are not possible until the entry of the order of this Court approving the windup, which include the following. Other than the response due from the IRS to the Forms 4810, the Receiver anticipates completion of the wind up tasks and the preparation and filing of the Final Report and Accounting within 90 days.

1. Upon entry of the requested Order authorizing the wind up of the Receivership Estate, the Receiver intends to prepare and file the Final (2018) QSF federal tax return and corresponding state return with the Commonwealth of Virginia.

---

[8] At the time the Receiver filed the first Form 4810, the three year period for any IRS objection had passed for the QSF returns covering tax years 2012 and 2013.

[9] The IRS response may take up to 18 months; however, in practice, responses are received much sooner and often within 6 months.

8

2. Thirty days after filing the final 2018 QSF tax return, the Receiver will seek prompt determination on Form 4810 from the IRS that it has accepted the tax filing and that no further action is required by the Receiver and/or the Receivership Estate.

3. Pending this Court's approval, the Receiver will remit an interim payment to the SEC for remission to the U.S. Treasury of $3,400,000 which would leave a balance of approximately $172,000 which amount shall be set up as a reserve (the "Reserve") for: (a) payment of fees and expenses for the period June 1, 2016 through June 25, 2018 at 100% of the invoiced amounts, in the approximate amount of $43,000.00;[10] (b) payment of previously approved but held back fees (at 20% of invoiced amounts fees in accordance with the Appointment Order) from the inception of the receivership through May 31, 2016, in the approximate amount of $62,227.80; (c) fees from June 26, 2018 until termination of the receivership estate together with any costs associated with the wind up which will be paid out of the Reserve and reported to SEC counsel and the Court; and (d) final payment to SEC for remission to the U.S. Treasury. The Receiver will file a Fee Petition within thirty (30) days seeking Court approval of amounts in (a) and (b) above.

4. The Receiver also seeks approval that disgorgement funds remaining in the Court's Registry be paid to the SEC for remission to the U.S. Treasury. This amount is $216,589.00 ($241,589.00 in cash paid by Defendant Peterson pursuant to the Final Judgment, less the $25,000 paid to the Garth Peterson Receivership Estate (discussed above in footnote 2, plus accrued interest.[11]

---

[10] Counsel for SEC will have an opportunity to review and provide comments to the Receiver's draft Final Fee petition, prior to the Receiver's filing of the document with the Court. In the meantime, the Receiver has kept SEC counsel informed as to fees and expenses to date.

[11] The Receiver will provide wiring instructions to the Clerk of the Court.

9

5. The Receiver also seeks approval to: (1) shred and destroy the hard copy records in the possession, custody or control of the Receiver and Receiver's counsel; and (2) retain electronic records relating to this receivership in accordance with their firms' records retention policy, which is currently 10 years. Counsel for SEC confirmed the above two provisions are acceptable to the SEC.

6. The Receiver will file a Final Report and Final Accounting with the Court confirming she has undertaken the planned steps to wind up the estate (anticipated to take approximately 90 days) and advising if any residual wind up tasks may be required, such as follow up with the Internal Revenue Service with regard to the Forms 4810 for the 2017 and 2018 (Final) QSF tax returns. The Final Report and Final Accounting will include: (a) a reconciliation of the Reserve remaining in the Garth Peterson Receivership Estate cash account; (b) detail the services provided by Receiver and her professionals from June 26, 2018 until the date of the Final Report and Final Accounting and request for payment for such services; (c) a request to make another interim payment to the SEC for remission to the U.S. Treasury; (d) a small reserve to cover the administration of those limited tasks that will be undertaken and as will be identified in the Final Report and Final Accounting, such as receipt of IRS responses to the Forms 4810 (discussed above) and the filing of the termination of Form 56 (Notice Concerning Fiduciary Relationship) with the IRS.

7. A draft format of the Receiver's <u>Proposed</u> Order of Discharge of Receiver and Termination of Receivership Estate Order[12] will be appended to the Final Report and Final Accounting seeking: (a) termination of the Receivership and discharge of the Receiver and her professionals; (b) approval to pay the Receiver and her professionals for the residual tasks

---

[12] The Receiver will file a Notice to the Court at the time that all residual tasks are completed and seek entry of the Proposed Order of Discharge of Receiver and Termination of Receivership Estate, the form of which will be an exhibit to the Final Report and Final Accounting..

10

implemented after the filing of the Final Report and Final Accounting; (c) approval to pay the remaining cash in the receivership estate to SEC for remission to the U.S. Treasury, to occur upon receipt of confirmation from the IRS that it has accepted all QSF federal returns as filed and there are no further actions required of the Receiver and/or Receivership Estate; and (d) a directive that the Receiver, her agents, employees, members, officers, independent contractors, attorneys and representatives are fully discharged, relieved of all duties and responsibilities pertaining to the Receivership previously established in this action and fully released from any and all claims, liabilities, and causes of action which might be brought against them by any party for matters arising out of and/or pertaining to the Receivership herein, including without limitation: (1) any operations of the Disgorged Asset; (2) claims asserted by any parties; (3) claims by any creditors and/or stakeholders of the Disgorged Asset, and the individual defendant, Garth R. Peterson; (4) or claims relating to the filing of any local, state, or federal tax returns, personal property returns and any compliance/reporting for the Receivership Estate, the Disgorged Asset or any of the Defendants herein and/or the reporting of any income, assets, or tax consequences to any person or entity; and (5) such other and further relief as may be appropriate.

### III. MUTUAL RELEASE OF LEO SEEWALD, STRONG MAN, AND THE RECEIVER

Mr. Seewald reportedly was intricately involved in the creation of Strong Man and Asiasphere, and he maintained the books and records for those entities as well as providing legal services. Mr. Seewald was also the sole director of Strong Man. As previously reported to the Court, the Receiver spent significant time to unwrap and understand the complex web of financial and other business transactions for the related entities discussion in Section II above, some of which involved entity deposits into the personal bank account of Mr. Seewald, a

Canadian attorney, currently Chairman and Country Head of Black Rock Investment Management (Taiwan) Company.[13] The Receiver has resolved all matters related to Mr. Seewald and Strong Man by way of a Mutual General Release executed on July 16, 2016.

By way of background, Mr. Seewald refused to directly speak directly with the Receiver and submit documents necessary for the Receiver to accomplish her tasks, including the determination of the Strong Man[14] capital contributions as related to the Seewald Group (friends and family of Leo Seewald). Ultimately the Receiver unraveled the transactions and agreed to the *pro rata* distribution due to the Seewald Group (as a result of its 19% interest in Strong Man). Hong Kong counsel retained by Strong Man on behalf of Mr. Seewald, helped facilitate the Receiver's analyses.

Several years ago, there were funds in the Strong Man bank account which seemed sufficient for Mr. Seewald to pay the legal fees incurred by Strong Man; however, he had asserted that the Receivership Estate should be responsible to help with the payment of certain legal fees that Strong Man incurred. The Receiver refused to comply with his request as she is not responsible for legal expenses of Strong Man and/or Mr. Seewald--and she did not assume management of Strong Man. The Hong Kong counsel advised the Receiver in March 2016, that Mr. Seewald let the Strong Man corporate charter lapse as "the project was complete."

As a result of the Receiver's final interactions with Mr. Seewald, through Hong Kong counsel, the parties negotiated and executed a Mutual General Release on July 16, 2016, by and between the Receiver and Mr. Seewald individually, and as the sole Director of Strong Man.

---

[13] Previously Mr. Seewald was Chairman of Manu Life Asset Management Company in Taiwan and Deputy General Counsel of Manu Life insurance operations in Taiwan. Information available on the internet indicates he has qualified as a solicitor in Hong Kong and a barrister and solicitor in British Columbia, Canada.

[14] The capitalization of Strong Man was 81% Paraplay and 19% Seewald Group. Strong Man had a 53% ownership in Asiasphere (with the other 47% ownership held by a government official. Asiasphere e had a 12% interest in the JLT Apartments.

The mutual release was important as the Receiver needed to resolve Mr. Seewald's assertions that the receivership estate should pay for the legal expenses of Strong Man, which legal services were incurred by Hong Kong counsel because Mr. Seewald refused to speak with the Receiver directly.

### IV.   WIND UP OF THE RECEIVERSHIP ESTATE IS APPROPRIATE

The Receiver seeks approval to perform the usual and customary closing and wind up procedures for a federal equity receivership estate as well as tasks incidental to those outlined in this Memorandum. The Receiver is not aware of any lien, potential liens, or other claims against the Disgorged Asset and/or the Receivership Estate. Because the administration of the Receivership Estate is ready to be completed, it is appropriate to grant the relief requested in this Motion.

Counsel for the SEC advised that he has no objections to the Receiver's Motion Seeking Authority to Wind Up the Receivership Estate and the proposed Order.

Dated:   July 16, 2018                                 Respectfully submitted,

*/s/  Brent Charles Strickland*
Brent Charles Strickland, Esquire, NY Bar No. BS7811
Whiteford Taylor & Preston L.L.P.
7501 Wisconsin Avenue
Bethesda, Maryland 20814
410.347.9402 Direct dial
410.223.1302 Facsimile
Martin T. Fletcher, Esquire
David Daneman, Esquire
Whiteford Taylor & Preston L.L.P.
Seven Saint Paul Street
Baltimore, Maryland  21202
410.347.8700 Main Telephone
bstrickland@wtplaw.com
mfletcher@wtplaw.com
ddaneman@wtplaw.com

*Attorneys for Marion A. Hecht, Receiver*

13

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 16th day of July, 2018, that a copy of the forgoing Memorandum in Support of Motion Seeking Authority to Wind Up the Receivership Estate was served via first class mail, postage prepaid, and/or via electronic mail, to:

Richard Hong
Securities & Exchange Commission
200 Vesey Street, Suite 400
New York, NY 10281
hongr@sec.gov

David Neuman
Securities & Exchange Commission
100 F Street, NE Mail Stop 4010-A
Washington, DC 20549
neumand@sec.gov

Frank H. Wohl
Lankler Siffert & Wohl LLP
500 Fifth Avenue, 33rd Floor
New York, NY 10110
fwohl@lswlaw.com

Winston Paes
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East, 5th Floor
Brooklyn, NY 11201
winston.paes@usdoj.gov

Abigail Elizabeth Rosen
Lankler Siffert & Wohl
500 Fifth Avenue
33rd Floor
New York, NY 10110
arosen@lswlaw.com

Jason A. Jones
U.S. Department of Justice
1400 New York Avenue, NW
(Bond Building)
Washington, DC 20005
jason.jones5@usdoj.gov

Garth R. Peterson at last known email addresses:
garth.r.peterson@gmail.com
R970351339@qq.com

                                                         */s/  Brent Charles Strickland*
                                                        Brent Charles Strickland, Esquire