IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | § | |
| COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. CV 12-2033 |
| vs. | § | Weinstein, Jack B. |
| | § | |
| GARTH RONALD PETERSON, | § | |
| | § | |
| Defendant. | § | |
| | § | |

_____

**RECEIVER MARION A. HECHT'S MOTION FOR APPROVAL OF
FINAL FEE APPLICATION COVERING THE PERIOD
JUNE 1, 2016 THROUGH JULY 31, 2018 AT 100% TOGETHER WITH 20%
HOLDBACK FOR THE PERIOD MAY 2, 2012 THROUGH MAY 31, 2016 FOR PRIOR
FILED FEE APPLICATIONS**

Marion A. Hecht, Receiver for Garth R. Peterson ("Receiver"), by and through her

counsel, Whiteford, Taylor & Preston L.L.P., hereby submits this Motion for Approval of:  (a)

the Final Fee Application (the "Final Fee Application") which includes the period June 1, 2016

through July 31, 2018; and (b) the 20% holdback from May 3, 2012 through May 31, 2016, and

in support thereof states as follows:

**A.     BACKGROUND AND RECEIVER APPOINTMENT**

On May 3, 2012, the Court entered an Order Establishing Receivership Estate (the

"Receivership Estate") and appointing Marion A. Hecht as Receiver ("Receivership Order") in

this action and Whiteford, Taylor & Preston L.L.P as Receiver's Counsel.  (*See* Docket Entry

No. 7).[1]  The Receivership Order (the "Receivership Order") provided that, subject to the Court's approval, the Receiver and Receiver's Counsel shall be compensated from the Receivership Assets for all reasonable fees and costs.  (*See* Order Appointing Receiver at Docket Entry No. 7; Pages 17-18, Paragraphs 54-55).

On July 16, 2018, the Receiver filed her Motion Seeking Authority to Windup the Receiver Estate and Memorandum in Support of Motion Seeking Authority to Windup the Receivership Estate (collectively the "Windup Motion") which this Court approved on July 20, 2018 (the "Windup Order").[2]  Pursuant to the Windup Order, the Receiver has commenced the steps for formally winding up the Receivership Estate as discussed more fully below in Section C.

## B.    PREVIOUSLY APPROVED FEE APPLICATIONS

The Receiver has made eleven (11) prior applications for professional fees at eighty percent (80%) and administrative expenses such as tax returns preparation and travel at one hundred percent (100%), amounting to $257,229.60 which have been paid to date.  *See* attached Exhibit P for the docket number and period covered for each of the eleven (11) Fee Applications.

| | | |
|---|---|---|
| Receiver Total Fees and Expenses | - | $176,339.42 |
| Receiver Tax Preparation | - | $   5,852.56 |
| Receiver's Counsel Total Fees and Expenses | - | $  75,037.62 |
| Total | - | $257,229.60 |

---

[1] Please refer to the Receiver's Memorandum in Support of Motion Seeking Authority to Windup of the Receivership Estate filed July 16, 2018 for a summarized background regarding the SEC Complaint, Final Judgment entered, and the monetization of the Disgorged Asset, the sole asset in this Receivership Estate. (*See* Docket Entry No. 58-1).

[2] This Court entered an Amended Windup Order on August 10, 2018 to change the form of transmitting the payment to SEC.  (*See* Docket No. 61).

Chart B immediately below summarizes the invoices included in the previously filed eleven (11) Fee Applications that were paid at 80% with the 20% of invoiced amounts held back pursuant to the Receivership Order.  Chart A below indicates the amount sought in this Final Fee Application at 100%, covering the period June 1, 2016 through July 31, 2018, plus the 20% held back amount in Chart B for a total amount sought in this Final Fee Application of $112,415.68 as discussed in more detail below in Section E.

### Chart A: 100% Sought for Invoices Covering June 1, 2016 through July 31, 2018 Plus 20% Holdback Related to Prior 11 Fee Applications

| Final Fee Application | Firm | Total Fees | Total Expenses | Total Fees & Expenses -Final Fee Application |
|---|---|---|---|---|
| 6/1/16 thru 7/31/18 (at 100%) | Clifton | $ 42,331.75 | $ 7.83 | $ 42,339.58 |
| 6/1/16 thru 7/31/18 (at 100%) | Counsel | $ 1,462.50 | $ 10.80 | $ 1,473.30 |
| Tax Preparation 2015, 2016, 2017 (at 100%) | Clifton | $ 6,375.00 | | $ 6,375.00 |
| *Sub-Total* | | *$ 50,169.25* | *$ 18.63* | *$ 50,187.88* |
| 20% hold back 5/2/12 thru 5/31/16 [see Chart B] | Clifton | $ 43,497.00 | | $ 43,497.00 |
| 20% hold back 5/2/12 thru 5/31/16 [see Chart B] | Counsel | $ 18,730.80 | | $ 18,730.80 |
| *Total Requested in Final Fee Application* | | *$ 112,397.05* | *$ 18.63* | *$ 112,415.68* |

### Chart B:  20% Holdback of $62,227.80 sought for amounts invoiced in prior 11 Fee Applications

| Firm | Total Fees Invoiced Thru 11th Fee App | Total Expenses Invoiced Thru 11th Fee App | Total Fees & Expenses | Fees Paid Thru 11th Fee App | Expenses Paid Through 11th Fee App (100%) | Total Fees (80%) & Expenses (100%) Paid through 11th Application as Court Approved | Fees Held Back (20%) through 11th Application |
|---|---|---|---|---|---|---|---|
| Receiver | $ 217,485.00 | $ 2,351.42 | $ 219,836.42 | $ 173,988.00 | $ 2,351.42 | $ 176,339.42 | $ 43,497.00 |
| Receiver's Counsel | $ 93,654.00 | $ 114.42 | $ 93,768.42 | $ 74,923.20 | $ 114.42 | $ 75,037.62 | $ 18,730.80 |
| *Fees & Expenses 5/31/12 thru 5/31/16 Paid at 80%* | *$ 311,139.00* | *$ 2,465.84* | *$ 313,604.84* | *$ 248,911.20* | *$ 2,465.84* | *$ 251,377.04* | *$ 62,227.80* |

**Chart C:  Total invoices from May 2, 2012 through July 31, 2018**

|  | Total Fees | Total Expenses | Total Fees & Expenses |
|---|---|---|---|
| Total Requested in Final Fee Application | $       112,397.05 | $              18.63 | $        112,415.68 |
| Fees & Expenses 5/3/12 thru 5/31/16 paid at 80%* | $       248,911.20 | $        2,465.84 | $        251,377.04 |
| Tax Preparation 2012, 2013, 2014 paid at 100% | $           5,852.56 | $                  - | $             5,852.56 |
| **Total Invoices First thru Final Fee Applications** | **$       367,160.81** | **$        2,484.47** | **$        369,645.28** |

\* see chart B above for breakdown of Receiver and Receiver's Counsel Fees & Expenses

## C.   COURT'S WINDUP ORDER INCLUDED RESERVE FOR PAYMENT OF OUTSTANDING FEES AND EXPENSES OF THE RECEIVERSHIP ESTATE

The Receiver informs the Court that regarding the status of the steps authorized in the Windup Order:  (a) initiated the windup the Receivership Estate which includes the filing of this Final Fee Application; (b) made an interim payment to SEC for remission to the U.S. Treasury of $3,400,000[3]; (c) sent SEC counsel a letter dated September 4, 2018 setting forth the thirty (30) day notice period of the Receiver's intention to shred all hard copy documents, unless SEC counsel advises in writing[4] that he would like such paper documents, and that the Receiver will retain electronic documents for a period a ten years; (d) set up a reserve of approximately $172,000 (the "Reserve")[5] from which the Receiver seeks approval to make payment for services rendered during period covered by this Final Fee Application[6]; (e) arranged for the transfer of the funds paid by Defendant Peterson held in the Registry of the Court to the SEC for remission to the U.S. Treasury and confirmed with SEC the receipt of such funds[7].

---

[3] Old Dominion National Bank sent a wire for $3,400,000 on July 25, 2018, which SEC counsel confirmed was received.

[4] The Receiver verbally discussed this with SEC counsel and informed him of the type of paper documents she has received from SEC.

[5] The "Reserve" will be used and accounted for in completing the windup activities normally required to resolve a federal equity receivership for the purposes identified in the Receiver's Windup Motion.

[6] As discussed in the Windup Motion, the Receiver will seek approval from the Court to make payment for services rendered from August 1, 2018 through the termination of the Receivership (the "Final Expense Period").

[7] On August 6, 2018, the Administrative Office of the Court requested a revision to the Windup Order to allow for the issuance of a check, versus a wire,  payable to SEC for the purpose of the transfer of the remaining funds held in the Court Registry deposited by Garth Peterson pursuant to this Court's Final Judgment at page 5, Section V, in the amount of $241,589, less the only drawdown of $25,000 paid to the Receivership Estate, plus interest earned on

This Court's Windup Order at paragraph D ordered the Receiver to establish a Reserve in the approximate amount of $172,000 for (a) payment of fees and expenses for the period June 1, 2016 through June 25, 2018 at 100% of the invoiced amounts, in the approximate amount of $43,000.00; (b) payment of previously approved but held back fees (at 20% of invoiced amounts fees in accordance with the Appointment Order) from the inception of the receivership through May 31, 2016, in the approximate amount of $62,227.80; (c) fees from June 26, 2018 until termination of the receivership estate together with any costs associated with the windup which will be paid out of the Reserve and reported to SEC counsel and the Court.  Further, paragraph D provided that after payments as discussed above, a final payment would be made to the SEC for remission to the U.S. Treasury.  The Receiver will report such amounts incurred during the Final Expense Period to the Court.[8]

## D.   CURRENT FEE APPLICATION AND SUMMARY OF PRIOR FEES APPLICATIONS

The Receiver has updated the period covered in this Final Fee Application to cover June 1, 2016 through July 31, 2018.[9]  As previously reported to the Court in the Windup Motion, the Receiver has monetized the Disgorged Asset and reconciled the escrowed amounts, which have been recovered.  Also, the Receiver has begun the windup steps as discussed in Sections A and C above. Refer to Exhibit Q for summary descriptions of task codes.  Also refer to Exhibits A through F for professional services incurred for June 1, 2016 through July 31, 2018.  Exhibit F.1

---

such funds held in the Court Registry. The Clerk of the Court is apparently unable to send a wire and requested authorization to issue a check instead to the SEC for remission to the U.S. Treasury. On August 8, 2018, the Receiver filed her amended Order to provide for the issuance of a check payable to SEC which the Court approved on August 10, 2018.   (*See* Docket Nos. 60 and 61).

[8] Professional fees for August 1, 2018 through the termination of the Receivership (the "Final Expense Period") will be reported to the Court.

[9] SEC counsel requested the Receiver update the Final Fee Application through a current date; therefore, this Final Fee Application covers the period June 1, 2016 through July 31 2018, as compared to the end date of June 25, 2018 discussed in the Windup Motion and Windup Order.

summarizes the professional fees and hours related to the prior eleven (11) fee applications. With regard to the 20% held back fees, please refer to Exhibit P.

Because this receivership has been ongoing for over six and one half years, the Receiver summarizes below in Section D.1 through D.12 for the Court's consideration of this final fee application, the professional services invoiced by her firm and by Receiver's Counsel from May 3, 2012 through May 31, 2016 in the prior interim eleven (11) fee application periods, and the final period covered by this Final Fee Application during June 1, 2016 through July 31, 2018.

As required by the SEC Billing Guidelines, the Receiver and her counsel kept track of their professional time in increments of 6 minutes (0.10 hour), and further did their best to categorize their services according to certain predefined task codes in the SEC Billing Guidelines.[10]

The three main task codes used by the Receiver and her forensic team were: (1) Case Administration (50.3% of Receiver services and 42.3% of Receiver hours); (2) Asset Disposition (13.5% of Receiver services and 11.1% of Receiver hours); and (3) Asset Analysis and Recovery (20.9% of Receiver services and 17.2% of Receiver hours). Because some of the Receiver's activities crossed over several of the task codes and there is subjectivity related to the task codes, the below summaries are written without specific reference to the three main task categories; however, Exhibit F reflects the total cost and total hours for the categories.

The Receiver submits that her efforts were always undertaken in the net best interest of the receivership estate, which was complicated by the fact the Disgorged Asset was an interest in a building in the Peoples Republic of China and there were multiple entities, many of which were incorporated off shore.  Further there was significant time spent with regard to Strong Man and

---

[10] Both the Receiver and her counsel agreed to the SEC Billing Guidelines, which documentation was included in their proposals to the SEC, and which the SEC included in its submission to the Court for appointment of Receiver. (*See* Docket No.  7).

the attorney who served as the sole director, who asserted an interest with certain of his friends and family in the Disgorged Asset.  Because the Receiver documented her efforts to monetize the Disgorged Asset in her Motion Seeking Authority to Windup the Receivership Estate and supporting Memorandum in Support of Motion (*See* Docket Nos. 58 and 58.1), she presents below, a summary of activities reported in prior fee applications along with a summary for this current reporting period included in this Final Fee Application.

There were several key groups of people that Receiver communicated with over the past six and one half years: (a) SEC counsels; (b) Receiver's Counsel: (c) Morgan Stanley senior executives, accountants, and counsel; (d) Leo Seewald, his counsel, and Strong Man's counsel retained by Leo Seewald; (e) Defendant Peterson and his counsels; (f) DOJ senior executives; (g) Asiasphere representatives; and (h) other parties with interest in or services related to the Disgorged Asset.

Receiver's counsel summary of legal services invoiced from May 3, 2012 through July 31, 2018 is also included below in Section D.1 through D.12.  The three main task categories for Receiver's counsel were: (1) Asset Analysis and Recovery (74.9% of law firm services and 79.9% of law firm hours); (2) Case Administration (13.4% of law firm services and 21.4% of law firm hours); and (3) Business Operations (5.8%% of law firm services and 3.2% of law firm hours).

**CHART D**
**[Receiver]**

| | FEES | | | | HOURS | | | |
|---|---|---|---|---|---|---|---|---|
| Engagement Task Codes per SEC Guidelines* | Amount Period Covered 6/1/16 thru 7/31/18 | Amount Period Covered 5/3/12 thru 5/31/16 [see Exh F.1] | TOTAL 5/3/12 thru 7/31/18 | % Task Code to Total Services | Hours Period Covered 6/1/16 thru 7/31/18 | Hours Period Covered 5/3/12 thru 5/31/16 [see Exh F.1] | TOTAL 5/3/12 thru 7/31/18 | % Hours to Total Hours |
| Asset analysis and recovery | $ 2,000.00 | $ 52,240.00 | $ 54,240.00 | 20.9% | 5.00 | 130.60 | 135.60 | 17.2% |
| Asset disposition | $ 1,720.00 | $ 33,480.00 | $ 35,200.00 | 13.5% | 4.30 | 83.70 | 88.00 | 11.1% |
| Case administration | $ 31,525.00 | $ 99,170.00 | $ 130,695.00 | 50.3% | 85.90 | 248.30 | 334.20 | 42.3% |
| Other task codes | $ 7,086.75 | $ 32,595.00 | $ 39,681.75 | 15.3% | 60.57 | 171.90 | 232.47 | 29.4% |
| *Professional Services Total* | $ 42,331.75 | $ 217,485.00 | $ 259,816.75 | 100.0% | 155.77 | 634.50 | 790.27 | 100.0% |

\* A breakdown of all task codes per SEC Guidelines is contained in Exhibit F

**CHART E**
**[Receiver's Counsel]**

| | FEES | | | | HOURS | | | |
|---|---|---|---|---|---|---|---|---|
| Engagement Task Codes per SEC Guidelines* | Amount Period Covered 6/1/16 thru 7/31/18 | Amount Period Covered 5/3/12 thru 5/31/16 [see Exh F.1] | TOTAL 5/3/12 thru 7/31/18 | % Task Code to Total Services | Hours Period Covered 6/1/16 thru 7/31/18 | Hours Period Covered 5/3/12 thru 5/31/16 [see Exh F.1] | TOTAL 5/3/12 thru 7/31/18 | % Hours to Total Hours |
| Asset analysis and recovery | $ 0.00 | $ 71,211.50 | $ 71,211.50 | 74.9% | 0.00 | 171.9 | 171.9 | 79.9% |
| Case administration | $ 937.50 | $ 11,823.00 | $ 12,760.50 | 13.4% | 2.50 | 18.9 | 21.4 | 10.0% |
| Business Operations | $ 0.00 | $ 5,527.00 | $ 5,527.00 | 5.8% | 0.00 | 14.8 | 14.8 | 6.9% |
| Other task codes | $ 525.00 | $ 5,092.50 | $ 5,517.50 | 5.9% | 1.40 | 5.6 | 7.0 | 3.2% |
| *Professional Services Total* | $ 1,462.50 | $ 93,654.00 | $ 95,116.50 | 100.0% | 3.90 | 211.2 | 215.1 | 100.0% |

\* A breakdown of all task codes per SEC Guidelines is contained in Exhibit F

1.    **First Fee Application [Period Covered May 3, 2012 - June 30, 2012]**

The Receiver undertook the following steps: (a) served notice of the Appointment Order to relevant parties, including the Jin Lin Tiandi Apartment Owners pursuant to Paragraph 22 of the Appointment Order; (b) initiated investigations and interacted with legal counsel and other parties related to Asiasphere and Strong Man  including the rights, obligations, assets and liabilities of those entities, together with reviews of the corporate structures, ownership, and financial transactions to gain an understanding of the best alternative regarding the recovery of

the Disgorged Asset; (c) **r**eviewed relevant documents and transactions to gain an understanding

of the current status of the JLT Apartments; (d) took steps necessary to preserve and protect the

Disgorged Asset; (e) pursued potential purchasers of the Disgorged Asset; and (f) **c**ommunicated

with a national bank to open an insured custodial account.   The Receiver also prepared her

Liquidation Plan which was filed with this Court.

On October 10, 2012, the Receiver filed a Motion for Order Directing Clerk of the Court

to Turnover Funds to a custodial account in the name of the receivership. (*See* Motion for

Release of Funds to Receiver for Reimbursement of Fees and Expenses of Receiver and her Firm

at Document 19).  This Court granted the Receiver's Order for Release of Funds on October 11,

2011. *(See* Docket No. 20).

As Receiver's Counsel incurred minimal time and expenses during this reporting period,

it did not submit a request for payment in the First Interim Fee Application.

**2.      Second Fee Application [Period Covered July 1, 2012 - September 30, 2012]**

The Receiver's and Receiver's Counsel's primary activities during this period consisted

of: (a)   continued   review, investigation and communication with regard to the multi-tiered

entities discussed above in D.1 regarding asserted direct and indirect ownership in the Disgorged

Asset including rights, obligations, assets and liabilities of those entities, together with review of

the corporate structures, ownership, governance documents and financial transactions to gain an

understanding of the best alternative regarding the recovery of the Disgorged Asset; (b) review

of the relevant documents and transactions to gain an understanding of the then current status of

the JLT Apartments, including the ability of the Receivership to participate in a refinancing of

the JLT Apartments; and (c) preparation of a liquidation plan for the sale of the Receivership's

interest in the Disgorged Assets.  In addition to assisting with the above, Receiver's Counsel

prepared the necessary documents for the transfer of Peterson's interests in the Disgorged Assets to the Receivership Estate. The Receiver prepared and filed the Receiver's first semi-annual status report on November 6, 2012 (*See* Notice by Marion Hecht Receiver's First Semi-Annual Status Report at Document 23);

3.      **Third Fee Application [Period Covered October 1, 2012 – December 31, 2012]**

The Receiver and Receiver's Counsel communicated with Defendant Peterson and his counsel; attorneys at the SEC and the Department of Justice ("DOJ"); as well as counsel for Morgan Stanley & Co., Inc. ("Morgan Stanley"), among others.   In addition, the Receiver continued to review documents produced by parties with knowledge of the business and operations of the JLT Apartments, Asiasphere and Strong Man. Further, the Receiver continued her investigation related to Asiasphere and Strong Man, including the rights, obligations, assets and liabilities of those entities, together with reviews of the corporate structures, ownership, and financial transactions to gain an understanding of the best alternative regarding the recovery of the Disgorged Asset as well as the refinancing efforts related to the Disgorged Asset.   The Receiver's efforts were undertaken to help preserve the Disgorged Asset and to pursue potential purchasers.

4.      **Fourth Fee Application [Period Covered January 1, 2013 – March 31, 2013]**

The Receiver and Receiver's Counsel communicated with Defendant Peterson and his counsel, attorneys at the SEC and the Department of Justice ("DOJ"), as well as counsel for Morgan Stanley & Co., Inc. ("Morgan Stanley"), among others.   In addition, the Receiver continued to review documents and expects additional documents to be produced by parties with knowledge of the business and operations of the JLT Apartments, Asiasphere and Strong Man.

In addition to the discussion above, additional actions taken by the Receiver and Receiver's Counsel included, but were not limited to investigation and communication with other parties related to Asiasphere and Strong Man, including the rights, obligations, assets and liabilities of those entities, together with reviews of the corporate structures, ownership, and financial transactions to gain an understanding of the best alternative regarding the recovery of the Disgorged Asset.

5. **Fifth Fee Application [Period Covered April 1, 2013 – June 30, 2013]**

The Receiver was informed by Morgan Stanley that other shareholders of the JLT Apartments expressed a desire to sell their interest in the project by December 31, 2013.  The Receiver then began steps to participate in a sale of the Receiver's interest at the same time, subject to approval by the Court.  Also during this reporting period, the Receiver reported: (a) she obtained approximately 1,500 pages from an indirect owner of the JLT apartments and continued to review them during the current period; (b) as a result of her review of those recently produced documents, she sent a document request to an indirect owner of the JLT Apartments for bank records and other information not produced as well as clarification on certain matters. Also, during the last reporting period, the Receiver received and reviewed approximately 1,300 pages and electronic images with respect to certain financial and banking records. The Receiver developed a list of banking records produced and not produced.   Further, the Receiver prepared her Second semi-annual status report which was filed May 7, 2013 (*See* Receiver Marion A. Hecht's Second Semi-Annual Status Report at Document 29).  In addition she reviewed the first receivership tax return which was timely filed by April 15, 2013.

6.      **Sixth Fee Application [Period Covered July 1, 2013 – September 30, 2013]**

The Receiver and her Counsel worked diligently to gain an understanding of the best alternative regarding the recovery and liquidation of the Disgorged Asset.  The Receiver's work has focused on Asiasphere and Strong Man, including the rights, obligations, assets and liabilities of those entities, together with reviews of the corporate structures, ownership, and financial transactions. To that end, the Receiver and her Counsel communicated with the interested parties, including Defendant Peterson and his counsel, attorneys at the SEC and the DOJ, as well as counsel for Morgan Stanley; and reviewed numerous documents and the list of additional documents that were expected to be produced by parties with knowledge of the business and operations of the JLT Apartments, Asiasphere and Strong Man.

More specifically, during this period, the Receiver's actions included the following: (a) shortly after the reporting period ended June 30, 2013, the Receiver gained an understanding that other shareholders of the JLT Apartments had expressed a desire to sell their interest in the project by December 31, 2013; (b) the Receiver continued to communicate with counsel and take steps to participate in a sale of the Receiver's interest at the same time, subject to approval by the Court;  (c) during the last week of the June 30, 2013, the Receiver obtained approximately 1,500 pages from an indirect owner of the JLT apartments and continued to review them during the reporting period ended September 30, 2013.  In addition, the Receiver sent a letter with significant document requests and certain resolutions to an indirect owner of the JLT Apartments for apparent bank record and other information not produced as well as clarification on certain matters;  Further, the Receiver communicated with counsel for an indirect owner of the JLT Apartments the urgency in his client's response to Receiver;

**7.      Seventh Fee Application [Period Covered October 1, 2013 – December 31, 2013]**

The Receiver and her Counsel continued to gain an understanding of the best alternative regarding the recovery and liquidation of the Disgorged Asset.  The Receiver's work focused on Asiasphere and Strong Man, including the rights, obligations, assets and liabilities of those entities, together with reviews of the corporate structures, ownership, and financial transactions. To that end, the Receiver and her Counsel communicated with the interested parties, including Defendant Peterson and his counsel, attorneys at the SEC and the DOJ, as well as counsel for Morgan Stanley.  The Receiver reviewed numerous documents and will continue to review additional documents that are expected to be produced by parties with knowledge of the business and operations of the JLT Apartments, Asiasphere and Strong Man.  More specifically, during this period, the Receiver's actions include the following: (a) the Receiver gained an understanding that other shareholders of the JLT Apartments had expressed a desire to sell their interest in the project which is anticipated to occur by the second quarter 2014, subject to approval by the Court; and (b) the Receiver learned that Defendant Peterson assigned his interest "in trust" in Strong Man during 2006 to one of the shareholders of Strong Man for no apparent consideration.  The Receiver, as beneficial owner of the 80% interest in Strong Man, requested the cancellation of such assignment "in trust" and the reissuance of those 8,100 shares to the Receivership Estate.  Further, the Receiver sought information from Defendant Peterson and other parties about Strong Man, including but not limited to, an apparent overseas bank account in the name of Strong Man and another entity.  Receiver's Counsel assisted with the drafting of various corporate resolutions and governance documents needed to the transfer 8100 shares to the Receivership Estate as well as a Tolling Agreement to preserve the Receivership Estate's rights to bring actions against the indirect owners.

**8.**     **Eighth Fee Application [January 1, 2014 – March 31, 2014]**

In addition to the continued communications with counsel at SEC, DOJ and Morgan Stanley regarding the business and operation of JLT Apartments, Asiasphere and Strong Man. the Receiver's and Receiver's Counsel's activities included: (a) review of additional information regarding the other shareholders of the JLT Apartments expressing a desire to sell their interest in the project; and (b) her continued discussions with counsel for an indirect owner of JLT Apartments and the negotiation and drafting of the documents relating to the return of 8,100 shares of Strong Man to Paraplay, and review of relevant documents and records. Furthermore, the Receiver and Receiver's Counsel investigated the possibility of commending foreign legal action to enforce the Receiver's rights to obtain information necessary for the recovery of the Disgorged Assets.

**9.**     **Ninth Fee Application [April 1, 2014 – June 30, 2014]**

During this period the Receiver's work focused on Asiasphere and Strong Man, including the rights, obligations, assets and liabilities of those entities, together with reviews of the corporate structures, ownership, and financial transactions. To that end, the Receiver and her Counsel have communicated with the interested parties, including Defendant Peterson and his counsel; attorneys at the SEC and DOJ, as well as counsel for Morgan Stanley regarding the JLT Apartments, Asiasphere and Strong Man. In addition, the Receiver's actions included the following: (a) Paraplay's 8,100 shares in Strong Man, representing 81% of the outstanding shares of Strong Man, were successfully recovered by the Receiver and returned to Paraplay; (b) MSR Capital Two Ltd. (Cayman) "MSR Capital", one of four investors in the Jin Lin Tiandi Holding Company ("JLTHC") identified a buyer ("Buyer") for JLTHC and Receiver was informed that MSR Capital negotiated purchase related agreements with a closing suggested to

14

occur as soon as September 26, 2014.  The parties agreed to pay the Receiver the full amount due according to the Receivership Estate's indirect interest in Asiasphere (42.93%).  (*See* Receiver Marion A. Hecht's Interim Status Report at Document 47.).  In addition, the Receiver continued to work through Strong Man's counsel to gain an understanding of assets and capital of Strong Man.  In addition to assisting with the above, Receiver's Counsel prepared documents for the transfer of the Strong Man interest in Paraplay and the resignation of Seewald as a director. Receiver's Counsel also communicated with and negotiated documentation with the Hong Kong counsel for Strong Man and Seewald relating to the anticipated distribution of the sale proceeds to the indirect interest holders of the JLT Apartments.

**10.    Tenth Fee Application [July 1, 2014 – December 31, 2014]**

The Receiver and her Counsel worked to gain an understanding of the best alternative regarding the recovery of the Disgorged Asset.  The Receiver's work has focused on Asiasphere and Strong Man, including the rights, obligations, assets and liabilities of those entities.   The Receiver's actions included the following: (a) communications with Morgan Stanley senior executives and counsel for Morgan Stanley regarding an anticipated sale in the third/fourth quarter of 2014 which did not occur unfortunately; (b) Continuing communications with Morgan Stanley senior executives and its counsel regarding their continuing efforts to find a purchaser and effect a potential sale of the JLT Apartments and the monetization of the Receiver's Disgorged Asset on a pro rata basis; (c) continuing communications with counsel for Strong Man in attempt to unravel the capital contribution of Leo Seewald for his asserted approximate 3% interest.  The communications occurred after relevant document review, including but not limited to the stock transfer resolutions, and an escrow agreement for the holding of certain portions of the sale proceeds from the sale of the JLT Apartments.  This process including the investigation

and analysis of the impact of laws of the British Virgin Islands on the sale. Receiver and her counsel also prepared and directed the mailing of a Notice of Sale of Foreign Assets to all interested parties.

**11. Eleventh Fee Application January 1, 2015 – March 31, 2016]**

During this reporting period, the Receiver and her Counsel monitored the document preparation relating to the sale of the JLT Apartments. Thereafter, the Receiver participated on a pro-rata basis in the sale of JLT Apartments to ZRT Grandton Capital and received a wire for $3,805,041.17 on October 26, 2015. Subsequently, the Receiver received her pro-rata distribution of the release of certain escrowed funds in the amount of $31,448.25 for a total recovery of $3,836,489.42. As discussed in the Receiver's Sixth Receiver's Report, there was the likelihood of additional recovery pending determination of certain tax payments due to the Peoples Republic of China. There was also the slight possibility that the Sellers of the JLT Apartments, including the Receiver, might have been required to remit additional funds to the extent the amounts remaining in escrow are not sufficient to cover the tax payments due to the Peoples Republic of China. The Receiver remained in contact with Morgan Stanley regarding the status of the tax payments, which were not resolved until 2018. There were communications with Morgan Stanley senior executives and counsel for Morgan Stanley regarding the ultimate sale of the Receiver's indirect interest in JLTHC in the fourth quarter 2015 which included review of draft and final closing documents and execution of the final closing documents. In addition, the Receiver had communications with counsel for Strong Man to unravel the capital contribution of the Leo Seewald Group for the asserted contributions for the members of that group's interest in Strong Man. Further, the Receiver oversaw the preparation and filing of tax returns.

12.     **Final Fee Application [June 1, 2016 – July 31, 2018]**

During this reporting period, the Receiver communicated with representatives for Morgan Stanley, the largest selling shareholder of the JLT Apartments, including its senior real estate executives, accountants, and other involved parties.  The key issues were tax related and involved complex excel spreadsheet completed by KPMG and the distribution of the balance of the escrowed funds.  Receiver and her Counsel reviewed all related documents.  Document review also included documents from Asiasphere.  Ultimately, the Receiver was satisfied with the reconciliation of the tax issues; the result from the PRC taxing authority was favorable to the Receivership Estate as refunds were received (from funds held in escrow).

In addition to resolving the remaining taxing and reconciling items for the Disgorged Asset, the Receiver and her Counsel prepared the Motion Seeking Windup of the Receivership Estate and supporting documents, and communicated on multiple occasions with SEC counsel regarding comments from SEC, which resulted in additional time spend revising the documents prior to submission to the Court.

**E.     PROFESSIONAL RATES APPROVED BY THIS COURT AND FACTORS TO BE CONSIDERED IN APPROVING THIS FINAL FEE APPLICATION**

**1.  Court Approved Rates and Procedures for Fee Applications**

The Court-approved fee schedules, which provide substantial discounts from the standard hourly rates of the Receiver and her staff at Clifton, and which the Court has already found to be reasonable are detailed below.  The Receiver has not requested an increase in the approved rates during the six year Receivership despite regular rate increases charged to other clients.

| Position | Professional | Rate |
|----------|--------------|------|
| Principal | Marion Hecht | $400 |
| Senior Manager | None at present | $300 |

| | | |
|---|---|---|
| Manager | Kanzaz Nguyen | $250 |
| Manager | Cassie Sadusky | $250 |
| Senior Associate/Supervisor | Singway Young | $200 |
| Associate | Lara Hogue | $150 |

(*See* Order Appointing Receiver at Docket Entry No. 7, Page 18, Paragraph 55).

The Court-approved fee schedules, which provide substantial discounts from the standard hourly rates of Receiver's Counsel, and which the Court has already found to be reasonable, are outlined below.  Likewise, the Receiver has not requested an increase in counsel's professional rates despite regular rate increases charged to other clients.

| Position | Professional | Rate |
|---|---|---|
| Partner | David Daneman | $375 |
| Partner | Robert D. Kalinoski | $375 |
| Partner | Brent Strickland | $375 |
| Associate | Joseph Selba | $260 |

(*See* Order Appointing Receiver at Docket Entry No. 7, Page 18, Paragraph 55).

Pursuant to the Receivership Order, the Receiver and her Counsel are to be paid from Receivership Assets their reasonable costs, fees, and expenses. (*See* Order Appointing Receiver at Docket Entry No. 7, Page 17-18, Paragraph 55).

Also, according to the Receivership Order, interim Fee Applications are shall be interim and will be subject to cost benefit and final reviews at the close of the receivership.  At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.  (*See* Order Appointing Receiver at Docket Entry No. 7, page 18, paragraph 57).

**2. Factors to Consider in Approving this Fee Application**

It is appropriate now to seek this Court's approval for this Final Fee Application and the Windup Order contemplated such payments in approving the Reserve of approximately $172,000 which is the approximate amount remaining after payment to the SEC in the amount of $3,400,000 as discussed in Section C above.  The Receiver's discussion is presented below regarding the cost benefit analyses regarding professional fees inconsideration of the gross recovery to the  Receivership Estate and in particular the recovery of the Disgorged Asset.[11]

The total recovery related to the Disgorged Asset was $3,907,932.85 as reflected on the SFAR attached hereto as Exhibit A.   The total gross recovery to the receivership estate is $3,963,102.48 as of July 31, 2018, as reported on the SFAR appended hereto as Exhibit A.

Because the Receiver recovered in excess of $3.9 million dollars on the monetization of the Receivership Estate interest in the Disgorged Asset, the Receiver submits to the Court that as a result of her due diligence, patience, and responsibility in monetizing the Disgorged Asset (which was an interest in the JLT Apartments as described most recently in detail in the Windup Motion) in the net best interest of the Receivership Estate, it is appropriate to now seek approval from the Court at this time for payment of the 20% held back fees of the Receiver and her counsel's invoices previously submitted to the Court and approved by the Court at 80%.  This Fee Application request is in alignment with the Windup Motion and Windup Order.  This Fee Application request is in alignment with the Windup Motion and Windup Order.  The total invoiced fees through July 31, 2018 of $369,645.28 is summarized in Chart C above in Section B and includes (a) the Receiver and her counsel's invoices covering the period June 1, 2016

---

[11] As reported to the Court in the Receiver's Windup Motion, the main asset in this matter was a Disgorged Asset that Defendant Peterson held directly and indirectly through multiple entities, which was ultimately liquidated in a sale as previously reported to the Court in the Windup Motion and earlier documents.

through July 31, 2018 at 100%;[12] and (b) the Receiver's request for approval for payment of the

20% held back fees (from previously submitted invoices through the 11th Fee Application[13]) as

outlined in Chart B above in Section B together with (c) tax preparation fees for tax years 2015,

2016, and 2017 not included in previous Fee Applications at 100%, which amount is also

included in Chart A.

The ratio of total Receivership Estate professional fees and costs through July 31, 2018 as

compared to gross recovery is 9.33% ($369,645.28 / $3,963,102.48). The ratio of total

professional fees and costs through July 31, 2018, related solely to the Disgorged Asset recovery

is 9.46% ($369,645.28 / $3,907,932.85).

This Court has the power to appoint a receiver and to award the receiver fees for the

receiver's services and for expenses incurred by the receiver in the performance of his or her

duties.  (*See Sec. & Exch. Comm'n v.  Byers,* 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008) ("A

receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be

fairly compensated for services rendered and expenses incurred." (citations omitted)).  The case

law on equity receiverships sets forth the standards for approving receiver compensation and the

fees and expenses for the receiver's counsel.  The District Court has discretion to determine

compensation to be awarded to a court-appointed equity receiver and the receiver's counsel.

*S.E.C. v. Byers,* 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008); see also *Gaskill v. Gordon*, 27 F.3d

248, 253 (7th Cir. 1994); *United States v. Code Prods. Corp.,* 362 F.2d 669, 673 (3d Cir. 1966).

The court may "consider all of the factors involved in a particular receivership in determining an

appropriate fee."  *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994).  Many authorities provide

---

[12] See Exhibits G and N appended to this Fee Application.

[13] See Exhibit P which identifies each fee application previously filed, the period covered, and the docket number for the Court's reference

"convenient guidelines," but in the final analysis, "the unique fact situation of each case renders direct reliance on precedent impossible." *Sec. & Exch. Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd*, 519 F. 2d 1087 (5th Cir. 1975).

In allowing counsel fees in Securities Act receiverships, "[t]he court will consider . . . the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." (*Sec. & Exch. Comm'n v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *(United States v. Code Prods.*, 362 F.2d 669, 673 (3rd Cir. 1966) (noting that the court should consider the time, labor and skill required (but not necessarily expended), the fair value of such time, labor and skill, the degree of activity, the dispatch with which the work is conducted and the result obtained) quoting *Coskery v. Roberts & Mander Corp.*, 200 F.2d 150, 154 (3d Cir. 1952). "[R]esults are always relevant." *Elliott*, 953 F.2d at 1577 (quoting *Moody*, 374 F Supp. at 480). However, a good result may take a form other than a bare increase in monetary value. *Id*. ("Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation."). Obviously, overall results can be determined only at the conclusion of the case.

Another "basic consideration is the nature and complexity of the legal problems confronted and the skill necessary to resolve them." *Moody*, 374 F. Supp. at 485. Moreover, "[t]ime spent cannot be ignored." *Id*. at 483. Lastly, the Court should recognize that the fees and expenses incurred in the Receivership to date will not necessarily be typical of future applications due to the extent of initial start-up work required to locate, analyze, secure and liquidate the assets. *See Gordon v. Dadante*, No. 1:05CV2726, 2008 WL 1805787, at *11 ([N.D.

21

Ohio April 18, 2008] recognizing that "as is common in cases of this nature (receiverships), the bulk of the effort-and expense-is frontloaded,". *aff'd* 336 Fed. Appx. 540 [6th Cir. 2009]).

Under these standards, the Receiver has demonstrated that the amount of fees requested for payment at this time is appropriate including the payment of the 20% holdback on fees since the appointment of the Receiver. The Receiver and Receiver's Counsel worked diligently to review and approve the closing documents which resulted in the gross recovery of $3,958,351.60 to the Receivership Estate as of April 30, 2018.[14] At this time and as a direct result of the monetization of the Disgorged Asset during the last quarter of 2015, the Receiver also seeks payment of the 20% holdback for her firm and Receiver's counsel's fees. The fee compensation requested does not include preparation of the Fee Applications and associated communications with Receiver's Counsel and the SEC. The Receiver represents as part of her continuing duty that there are no known conflicts of interest between the Receiver, her Retained Personnel and the Receivership Estate.

**F.    SUMMARY**

Pursuant to paragraph 60 of the Receivership Order, the Receiver is now filing this final application for compensation and expense reimbursement covering the period from the inception of the receivership through July 31, 2018. The Receiver and her counsel request that the Court exercise its discretion and authorize the payment of one hundred percent (100%) of the fees and costs incurred and invoiced over the past six years,[15] which includes previously held back fees at 20% through May 31, 2016.

---

[14] Interest continues to accrue on Receivership funds which are insured.

[15] As discussed herein, the Receiver will file a Final Report and Accounting with the Court seeking authorization for payment of fees for the windup and termination period beginning with August 1, 2018 covering the Final Expense Period.

The exhibits appended to this Fee Application as well as the narrative descriptions in this Application evidence the time and labor employed in processing this Receivership Estate through July 31, 2018.

The Receiver and her professionals' compensation in this matter are subject to the final approval of this Court. Based on the foregoing, the Receiver respectfully submits that the compensation sought by the Receiver and her team is wholly warranted and that the Receiver and her team monetized the Disgorged Asset in a cost effective manner (approximately 9.33% of the gross proceeds of the Disgorged Asset as discussed in Section E.2 above.) with minimal expense to the Receivership Estate. Counsel for SEC has reviewed the Receiver's Final Fee Application[16] and Exhibits and does not object to the filing of this fee application, which includes the payment of the 20% previously held back fees through May 31, 2016.

WHEREFORE, the Receiver respectfully requests that the Court grant this Motion and thereby authorize the following payments:

a.   Payment of $42,331.75 to Clifton, which constitutes the Receiver's firm's invoiced fees (at 100%) for the period June 1, 2016 through July 31, 2018.

b.   Payment of $2,500.00 to Clifton for the 2015 federal and state tax returns filed in 2016.

c.   Payment of $2,000.00 to Clifton for the 2016 federal and state tax returns filed in 2017.

---

[16] Ibid.

d.   Payment of $1,875.00 to Clifton for the 2017 federal and state tax returns filed in 2018.

e.   Payment of $7.83 to Clifton, which constitutes the Receiver's firm's invoiced expenses (at 100%) for the period June 1, 2016 through July 31, 2018.

f.   Payment of $43,497.00 to Clifton representing the *20% held back* fees for invoices from May 3, 2012 through May 31, 2016.

g.   Payment of $1,462.50 to Receiver's Counsel, Whiteford, Taylor & Preston L.L.P. ("Receiver's Counsel") which constitutes the law firm's invoiced fees (at 100%) for the period June 1, 2016 through July 31, 2018.

h.   Payment of $10.80 to Receiver's Counsel, which constitutes Receiver's Counsel's invoices expenses (at 100%) for the period June 1, 2016 through July 31, 2018.

i.   Payment of $18,730.80 to Receiver's Counsel representing the *20% held back* fees for invoices from May 3, 2012 through May 31, 2016.

In light of the complexity of the problems presented in this Receivership Estate as reported to the Court, including the uncertainties and difficulties liquidating an overseas Disgorged Asset, coupled with the Receiver's resolution of claims against certain pre-receivership related parties without protracted litigation, this Receivership Estate has benefited with a 9.46% ratio of costs to Disgorged Asset recovery of $3,907,932.85 which exceeds the amount of the Judgment.[17] The Receiver respectfully submits that she and her counsel acted at all times in the net best interest of the receivership estate for over six and one half years; did not seek any increases in hourly rates despite regular increases for other clients; and that the amounts

---

[17] Refer to the Receiver's Windup Motion at Section I.A.

requested to be paid at this time are fair and reasonable.

Dated:   September 6, 2018                    Respectfully submitted,


                                    ___/s/  Brent C. Strickland_____
                                    Brent C. Strickland, Esquire, NY Bar No. BS7811
                                    Whiteford Taylor & Preston L.L.P.
                                    7501 Wisconsin Avenue, Suite 700W
                                    Bethesda, MD 20814-6521
                                    301.804.3610 Main Telephone
                                    410.223.4302 Main Facsimile
                                    Martin T. Fletcher, Esquire
                                    David Daneman, Esquire
                                    Whiteford Taylor & Preston L.L.P.
                                    Seven Saint Paul Street
                                    Baltimore, Maryland  21202
                                    410.347.8700 Main Telephone
                                    410.752.7092 Main Facsimile
                                    bstrickland@wtplaw.com
                                    mfletcher@wtplaw.com
                                    ddaneman@wtplaw.com

                                    *Attorneys for Marion A. Hecht, Receiver*

COMPLETE EXHIBIT LIST TO RECEIVER'S FINAL FEE APPLICATION

Exhibit A    –   Standard Fund Accounting Report (May 2, 2012 - July 31, 2018)

Exhibit B    –   Summary of Clifton's fees by each professional (June 1, 2016 - July 31, 2018)

Exhibit C    –   Summary of Clifton's fees by month and engagement (June 1, 2016 - July 31, 2018)

Exhibit D    –   Summary of Clifton's expenses by month (June 1, 2016 - July 31, 2018)

Exhibit E    –   Summary of Clifton's fees and expenses by engagement (June 1, 2016 - July 31, 2018)

Exhibit F    –   Summary of Clifton's fees by task code and expenses (June 1, 2016 - July 31, 2018)

Exhibit F-1  -   Summary of Clifton's fees by task code and expenses (Fee Applications 1 to 11)

Exhibit G    –   Detailed invoices of Clifton's professional time (June 1, 2016 - July 31, 2018)

Exhibit H    –   Certification of Receiver for this Final Fee Application

Exhibit I    –   Receiver's Counsel's Summary of Professional Time (June 1, 2016 - July 31, 2018)

Exhibit J    –   Receiver's Counsel's Summary of Fees (June 1, 2016 - July 31, 2018)

Exhibit K    –   Receiver's Counsel's Summary of Costs (June 1, 2016 - July 31, 2018)

Exhibit L    –   Receiver's Counsel's Summary of Time and Expenses (June 1, 2016 - July 31, 2018)

Exhibit M    –   Receiver's Counsel's Summary of Tasks and Fees (June 1, 2016 - July 31, 2018)

Exhibit M-1  -   Receiver's Counsel's Summary of Tasks and Fees (Fee Applications 1 to 11)

Exhibit N    –   Detailed Invoices of Receiver's Counsel (June 1, 2016 - July 31, 2018)

Exhibit O    –   Receiver's Counsel's Certification for this Final Fee Application

Exhibit P    –   Total Costs for Fees and Expenses (May 3, 2012 - May 31, 2016)

Exhibit Q   –   Summary of Descriptions for Task Codes per SEC Billing Guidelines as adjusted for reference to this Receivership Estate[18]

---

[18] The Receiver and her professionals agreed to be bound by the SEC Billing Guidelines including but not limited to the sample categories for time descriptions. The Receiver's Exhibit Q reflects the SEC Billing Guidelines and includes specific subject matter that relates to this receivership estate.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY on this 6th day of September, 2018, that a copy of the foregoing Motion for Approval of Final Fee Application for the Period Ended July 31,, 2018 of Receiver, Marion A. Hecht, and CliftonLarsonAllen, LL, and Receiver's Counsel, Whiteford, Taylor and Preston L.L.P., and proposed Order was mailed via first class mail, postage prepaid, and/or via electronic mail, to:

Richard Hong
Securities & Exchange Commission
100 F Street
NE Mail Stop 4010-A
Washington, DC 20549
hongr@sec.gov

David Neuman
Securities & Exchange Commission
100 F Street, NE Mail Stop 4010-A
Washington, DC 20549
neumand@sec.gov

Abigail Elizabeth Rosen
Lankler Siffert & Wohl
500 Fifth Avenue
33rd Floor
New York, NY 10110
arosen@lswlaw.com

Garth R. Peterson
garth.r.peterson@gmail.com
R970351339@qq.com

Frank H. Wohl
Lankler Siffert & Wohl LLP
500 Fifth Avenue, 33rd Floor
New York, NY 10110
fwohl@lswlaw.com

Winston Paes
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East, 5th Floor
Brooklyn, NY 11201
winston.paes@usdoj.gov

Jason A. Jones
U.S. Department of Justice
1400 New York Avenue, NW
(Bond Building)
Washington, DC 20005
jason.jones5@usdoj.gov

　　　　　　　　　　　　　　　_/s/  Brent C. Strickland_____
　　　　　　　　　　　　　　　Brent C. Strickland, Esquire

28