IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § § § Plaintiff, § § § vs. § § GARTH RONALD PETERSON, § § Defendant. § § | Civil Action No. CV 12-2033 Weinstein, Jack B. |

**MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S MOTION FOR APPROVAL OF (I) FINAL REPORT AND FINAL ACCOUNTING; (II) FORMAT OF PROPOSED ORDER  DISCHARGING RECEIVER AND TERMINATING RECEIVERSHIP; AND (III) FORM OF NOTICE OF TERMINATION OF RECEIVERSHIP**

Marion A Hecht ("Receiver"), Receiver for Garth R. Peterson ("Peterson"), submits this memorandum in support of her Motion for Approval of (I) Final Report and Final Accounting; (II) Format of Proposed Order Discharging Receiver and Terminating Receivership; and (III) Form of Notice of Termination of Receivership now that the receivership proceeding relating to Garth R. Peterson has been concluded and that the Disgorged Asset which was the subject of this receivership estate has been fully administered by the Receiver, all as set forth in previous filings with the Court and orders entered by the Court over the course of this receivership.

## I.   INTRODUCTION

Preparation of the Receiver's Final Report and Final Accounting (the "Final Report and Final Accounting") and an interim payment to SEC for remission to the U.S. Treasury are tasks required to be performed by this Court's order entered August 10, 2018 (*See* Docket Entry No. 61)

("Windup Order"[1]). The Receiver has completed most of the contemplated windup tasks. The Final Report and Final Accounting, attached to this memorandum as Exhibit "A," summarizes the activities completed by the Receiver pursuant to the Wind Up Order, as well as the remaining tasks outlined in the Final Report and Final Accounting, that are necessary to complete administration of the receivership estate.

## II.   THE RECEIVER'S FINAL REPORT AND FINAL ACCOUNTING SHOULD BE APPROVED

It is appropriate and necessary for the Receiver to seek Court review and approval of her Final Report and Final Accounting, which summarizes her activities to manage, marshal, operate, and monetize the receivership assets, and to have the Court confirm that her activities during the course of the receivership were appropriate. *See* Ralph Ewing Clark, *A Treatise on the Law and Practice of Receivers*, Vol. 2, § 383.1, pp. 643-644 (3d ed. 1992) ("A receiver's account and report is for the purpose of informing the appointing court and parties interested of the receiver's stewardship. Since the receiver is the court's officer, the court may at its own instance approve or disapprove the report of the receiver").

The Final Report and Final Accounting establishes that the Receiver, her staff and her counsel rendered appropriate and necessary services and obtained significant and beneficial results for the receivership estate throughout the receivership. *See Federal Trade Commission v. Capital Acquisitions & Management Corp.,* No. 04 C 7781, 2005 WL 3676529 (N.D. Ill. Aug. 26, 2005). The administration of the receivership estate is complete, and there are no remaining receivership assets other than cash. As discussed in the Final Report and Final Accounting, the expedient and

---

[1] Among other tasks, the Windup Order also required the Receiver to prepare the file the final receivership estate, tax returns with the Internal Revenue Service and the Commonwealth of Virginia, and final Fee Application.

effective activities of the Receiver and her counsel during the receivership resulted in monetization of the Disgorged Asset, a minority interest in an offshore property in the Peoples Republic of China as explained in more detail in the Receiver Marion A. Hecht's Memorandum in Support of Motion Seeking Authority to Windup the Receivership Estate (*See* Docket Entry No. 58-1) and Receiver Marion A. Hecht's Motion for Approval of Final Fee Application Covering the Period June 1, 2016 through July 31, 2018 at 100% Together with 20% Holdback for the period May 2, 2012 through May 31, 2016 for Prior Filed Fee Applications[2] (*See* Docket No. 62). Thus the relief sought in connection with the windup of this receivership is appropriate and should be granted.

**III.     THE RELIEF SOUGHT IN THE PROPOSED ORDER TERMINATING THE RECEIVERSHIP IS APPROPRIATE AND NECESSARY.**

The Court has wide latitude in supervising the Receiver and may provide for administration of a receivership estate that it deems appropriate. 13 *Moore's Federal Practice* § 66.06[4][a] (Matthew Bender 3d ed. Rev. 2013); *Securities and Exchange Commission v. Hardy*, 803 F.2d 1034 (9th Cir. 1986). Even though the reported decisions concerning federal receiverships are limited, two overriding principles may be gleaned from the case law:

> First, a district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad.... The basis for broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions.
> . . .
> Secondly, we have acknowledged that a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors [*citations omitted*.] Accordingly, we generally uphold reasonable procedures instituted by the district court that serve this purpose [*citations omitted*.]

---

[2] The Final Fee Application is pending before this Court.

*Hardy*, 803 F. 2d at 1037-1038; *accord Securities and Exchange Commission v. Black*, 163 F.3d 188, 199 (3d Cir. 1998); *Securities and Exchange Commission v. Elliot*, 953 F.2d 1560, 1566 (11th Cir. 1992).

The proposed order terminating this receivership (attached as Exhibit 2 to the Final Report and Accounting) contains two important provisions that are necessary to protect the Receiver and are authorized by applicable law. The first provides that any action purporting to challenge anything done by the Receiver in this proceeding must be channeled through this Court and the second provides for a comprehensive release of the Receiver. The sources of the Court's authority to grant this relief are the equitable powers of the federal courts, the exercise of which is evidenced by federal common law. While various statutes and rules refer to those powers, they do not purport to displace those powers. The exercise of those powers, if appealed, will be reviewed for abuse of discretion. Baron v. Vullo, 699 Fed. Appx. 102 (2d Cir. 2017).

Channeling any post-termination challenges to actions taken in this receivership through this Court is authorized by a federal equitable doctrine enunciated in Barton v. Barbour, 104 U.S. 126 (1881), which requires a claim against a receiver to be brought in the court in which the receivership was pending. An exception to the Barton doctrine is set forth in 28 U.S.C. § 959(a), enacted in 1887, against a background of railroad insolvencies that resulted in receivers actually operating railroads for extended periods of time. See dissenting opinion of Justice Miller in Barton and In re VistaCare Group, LLC, 678 F.3d 218, 224-228 (3d Cir. 2012). This statute makes the common sense point that an action arising from the operation of an ongoing business can be brought in any court having jurisdiction, even if the business had been operated by a receiver. In re VistaCare Group, LLC, 678 F.3d at 226; Vass v. Conron Bros. Co., 59 F.2d 969, 971, (2d Cir. 1932). However, the fact that some operation of a business in a receivership is necessary for the

4

most effective and beneficial liquidation of its assets, as was the case in this receivership, does not mean that the business is being "operated" within the meaning of Section 959(a). Barton, 104 U.S. at 135-137.

In a receivership, the federal court acts "under its general equity powers, independently of any state statute …." Burnrite Coal Briquette Co. v. Riggs, 274 U.S. 208, 212 (1927). The powers of federal courts with respect to receiverships are remedial, not substantive, and therefore do not depend upon state law. Equity derives its doctrines and powers "from its mode of giving relief" and those doctrines and powers in the federal courts constitute a "separate legal system" originating in the body of law "transplanted to this country from the English Court of Chancery." Guaranty Trust v. York, 326 U.S. 99, 105 (1945). Thus, "… the appointment of a receiver is merely an ancillary and incidental remedy. A receivership is not final relief. The appointment determines no substantive right; nor is it a step in the determination of such a right. It is a means of preserving property which may ultimately be applied toward the satisfaction of substantive rights." Pusey & Jones Co. v. Hansen, 261 U.S. 491, 497 (1923). A receiver is an agent of the court, and any claim against the receiver is in substance and in law a claim against the receivership estate, not the receiver personally: "[a]ctions against the receiver are in law actions against the receivership … and [the receiver's] contracts, misfeasances, negligences and liabilities are official and not personal…." McNulta v. Lochridge, 141 U.S. 327, 332 (1891).

In short, the practices of federal courts in receiverships are not "given by any statute" but rather by principles of federal common law. McNulta, 141 U.S. at 329; VistaCare, 678 F.3d at 224, see discussion in Schwarz, "Termination of SEC Receiverships in the Federal Courts," 43 Fordham L. Rev. No. 2, 163, 169-171 (1974).

5

Under federal common law, the powers of the federal courts to supervise receivers and receiverships are quite broad, Hardy, 803 F.2d at 1037, and are subject to Rule 66, Federal Rules of Civil Procedure. Rule 66 makes a procedural distinction between actions to appoint a receiver and actions by and against a receiver, on the one hand, and the process of "administering an estate by a receiver." The former, as litigation matters in the federal courts, are to be governed by the Federal Rules of Civil Procedure while the latter are to accord with "the historical practice in the federal courts or with a local rule." Phelan v. Middle States Oil Corp., 210 F.2d 360 (2d Cir. 1953). The question in Phelan was whether a receiver's final accounting, presented as a condition to releasing the receiver from claims relating to administration of the receivership estate, was part of the "administration" of the estate, and the court concluded that it was not. Phelan, 210 F.2d at 363-64.

However, Phelan does not discuss the origin of the court's power to release a receiver, provided that the requirements of the Federal Rules are met as to procedure. Once the receiver has completed the tasks delegated to her by the court, it is customary for the court, if requested, to provide a release to the receiver. See, e.g., Phelan, 210 F.2d at 363; Baron, supra; In re F. H. McGraw & Co., 473 F.2d 465 (3d Cir. 1973). The release will be effective against those parties who receive notice of the request, but due process does not require that notice be provided to every party who could conceivably have been affected by the receivership, but rather only to "parties" to the receivership case. Henderson v. West Jackson Student Housing, LLC, 676 Fed. Appx 293 (5th Cir. 2017). This approach is consistent with due process as understood in Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314-15 (1950); "[a]n elementary and fundamental requirement of due process in any proceeding … is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections …. 'The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.'" (emphasis added and citations omitted).  These criteria are satisfied by the notice that the Receiver proposes to provide to all known parties-in-interest in this receivership proceeding (attached as Exhibit 3 to the Final Report and Accounting).

      Thus in Henderson, supra,  the court rejected a challenge by a wrongful death claimant to the release of the receiver who had operated the apartment complex where the death occurred, affirming both the authority of the receivership court to provide the release and the appropriateness of notice restricted to parties in the receivership case.  A release may also  appropriately provide for the release of unknown claims by parties to the receivership proceeding,  Wells Fargo Bank, N.A. v. West Jackson Student Housing, LLC, 2012 US Dist. LEXIS 168615 (SD Miss. 2012), and will function as res judicata with respect to subsequent claims against the receiver. Peterson v. Saperstein, 267 Fed. Appx 751 (10th Cir. 2008).  Releases are customarily given in receivership cases.

      In this case, the Receiver will provide notice of the proposed termination to a list of parties with whom she had significant dealings with during this receivership, many of whom did not enter an appearance and therefore have not been on Certificates of Service for documents filed with the Court.

      The Receiver has achieved exemplary results in this proceeding.  At all necessary times, the Receiver sought guidance from the Court as to how to proceed in this receivership, and it is therefore appropriate that now, at the conclusion of this proceeding, she be protected by the authority of the Court, as she was while this case was pending.  The release and channeling

provisions in the proposed final order are within the Court's equity powers, are appropriate under the circumstances of this case, and should be approved.

The Receiver's proposed Order of Discharge of Receiver and Termination of Receivership Estate, as well as proposed Notice to persons of interest, are similar in substantive content to documents she filed in another federal equity receivership matter pending in the U.S. District Court for the District of Maryland in <u>SEC v. Colonial Tidewater Realty Income Partners, LLC, et al.,</u> Case No. 1:15-cv-02401-ELH (*See* Docket Entry No. 143).

Counsel for the SEC advised that he has no objections to the Receiver's Motion for Approval of (I) Final Report and Final Accounting; (II) Format of Proposed Order Discharging Receiver and Terminating Receivership; and (III) Form of Notice of Termination of Receivership.

Dated: October 18, 2018　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　*/s/ Brent Charles Strickland*
　　　　　　　　　　　　　　　　　　　　　Brent Charles Strickland, Esquire, NY Bar No. BS7811
　　　　　　　　　　　　　　　　　　　　　Whiteford Taylor & Preston L.L.P.
　　　　　　　　　　　　　　　　　　　　　7501 Wisconsin Avenue
　　　　　　　　　　　　　　　　　　　　　Bethesda, Maryland 20814
　　　　　　　　　　　　　　　　　　　　　410.347.9402 Direct dial
　　　　　　　　　　　　　　　　　　　　　410.223.1302 Facsimile
　　　　　　　　　　　　　　　　　　　　　Martin T. Fletcher, Esquire
　　　　　　　　　　　　　　　　　　　　　David Daneman, Esquire
　　　　　　　　　　　　　　　　　　　　　Whiteford Taylor & Preston L.L.P.
　　　　　　　　　　　　　　　　　　　　　Seven Saint Paul Street
　　　　　　　　　　　　　　　　　　　　　Baltimore, Maryland  21202
　　　　　　　　　　　　　　　　　　　　　410.347.8700 Main Telephone
　　　　　　　　　　　　　　　　　　　　　410.752.7092 Main Facsimile
　　　　　　　　　　　　　　　　　　　　　bstrickland@wtplaw.com
　　　　　　　　　　　　　　　　　　　　　mfletcher@wtplaw.com
　　　　　　　　　　　　　　　　　　　　　ddaneman@wtplaw.com

　　　　　　　　　　　　　　　　　　　　　*Attorneys for Marion A. Hecht, Receiver*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of October, 2018 a true and correct copy of the foregoing was served via U.S. Mail and/or via electronic mail upon the following parties:

| | |
|---|---|
| Richard Hong<br>Securities & Exchange Commission<br>200 Versey Street, Suite 400<br>New York, NY  10281<br>hongr@sec.gov | David Neuman<br>Securities & Exchange Commission<br>100 F Street, NE Mail Stop 4010-A<br>Washington, DC 20549<br>neumand@sec.gov |
| Frank H. Wohl<br>Lankler Siffert & Wohl LLP<br>500 Fifth Avenue, 33rd Floor<br>New York, NY 10110<br>fwohl@lswlaw.com | Winston Paes<br>United States Attorney's Office<br>Eastern District of New York<br>271 Cadman Plaza East, 5th Floor<br>Brooklyn, NY 11201<br>winston.paes@usdoj.gov |
| Abigail Elizabeth Rosen<br>Lankler Siffert & Wohl<br>500 Fifth Avenue<br>33rd Floor<br>New York, NY 10110<br>arosen@lswlaw.com | Jason A. Jones<br>U.S. Department of Justice<br>1400 New York Avenue, NW<br>(Bond Building)<br>Washington, DC 20005<br>jason.jones5@usdoj.gov |

                                          */s/  Brent Charles Strickland*
                                          Brent Charles Strickland, Esquire